J-S63022-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| --- | --- |
| Appellee | |
| v. | |
| RONDALE MALIK GETER | |
| Appellant | No. 181 WDA 2017 |

Appeal from the Judgment of Sentence Dated February 23, 2016
In the Court of Common Pleas of Blair County
Criminal Division at No(s): CP-07-CR-0000710-2015

BEFORE: BOWES, J., SOLANO, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY SOLANO, J.:                    FILED DECEMBER 27, 2017

Appellant Rondale Malik Geter appeals from the judgment of sentence imposed after a jury convicted him of acquisition of a controlled substance by misrepresentation, possession of a controlled substance with intent to deliver, participation in a corrupt organization through racketeering activity, conspiracy (corrupt organizations, and acquisition of a controlled substance by misrepresentation), dealing in proceeds of unlawful activity, identity theft, forgery, and criminal use of a communication facility.[1] We affirm.

The relevant procedural facts are as follow. On May 1, 2015, the Commonwealth[2] filed a criminal information charging Appellant with thirty-seven counts related to his involvement in a criminal organization which

_____

[1] 35 P.S. §§ 780-113(a)(12) and (30); 18 Pa.C.S. §§ 911(b)(3), 903, 5111(a)(1), 4120(a), 4101(a)(3), and 7512(a).

[2] The Commonwealth was represented by members of the Attorney General's office.

presented fraudulent prescriptions to pharmacies for the purposes of acquiring and selling Oxycodone.[3] On June 3, 2015, the Commonwealth filed a Notice of Trial Joinder,[4] joining Appellant's case with that of his co-defendant, Kevin Andrews. The Commonwealth alleged that Andrews was the head of the organization and created the false prescriptions; Appellant was an assistant who recruited and drove the "runners" (who would enter the pharmacies and fill the forged prescriptions using someone else's identification) along with Andrews to the pharmacies.

On July 29, 2015, Appellant filed an omnibus pre-trial motion, which included a motion to sever his case from that of Andrews. During the hearing on the motion to sever (on November 9, 2015), Appellant argued that many of the witnesses would testify as to Andrews' involvement, but that those witnesses had "nothing to do" with Appellant, who, he alleged, only entered the operation towards the end of the charged time frame. N.T., 11/9/15, at 12-15. The Commonwealth responded that Appellant's charges and Andrews' charges covered the same time period and alleged the same crimes, and argued that many of the witnesses at separate trials would overlap. Id. at 22-24. The Commonwealth explained that Appellant's position in the management of the drug operation would "fit in the second

_____

[3] The information charging Appellant was date-stamped by the office of the Prothonotary on April 24, 2015, but filed on the docket on May 1, 2015.

[4] The notice was not included in the certified record.

- 2 -

layer," under Andrews' direction. Id. at 24-25. Although it did not make a ruling during the hearing, the court noted —

> this isn't a case where Mr. Andrews is charged with homicide and his case is going to be tried because there is some case law that says that if there's a prejudicial, you know, if some very serious charge is against one person that isn't allege against another person then that could create potential prejudice[.]

N.T., 11/9/15, at 15. On November 16, 2015, the trial court denied the motion to sever.

The trial of Appellant and Andrews[5] took place over seven days, commencing on December 7, 2015. The Commonwealth presented over thirty witnesses, including Agent Duane Musser, who testified regarding his investigation into forged prescriptions that have been used to acquire prescription drugs at pharmacies throughout Pennsylvania.[6] Musser's investigation led him to the names of approximately 25 other people involved in passing the forged prescriptions, including Appellant. See N.T. 12/7/17, at 87.

Many of the witnesses' testimony directly implicated Andrews, but not

_____

[5] Throughout the trial, Andrews represented himself pro se, and defended solely on the theory that he is a "sovereign citizen." See Commonwealth v. McGarry, 172 A.3d 60, 65-66 (Pa. Super. 2017) (rejecting a "sovereign citizen" defense as frivolous).

[6] The court allowed Agent Musser to testify as an expert "with regards to the illegal acquisition of controlled substance[s], particularly prescription medications, as well as the use of forged prescriptions concerning the obtaining of that type of prescription medication." See N.T., 12/7/15, at 52-61.

Appellant.[7] Several others (including Dalila Torres, Jennifer Freeman, Albert Boykin, and Kristen Berry) testified that they filled forged prescriptions for Andrews, and that Appellant was also present or driving the car at the time that they went to the pharmacies, were given money and false prescriptions, and were paid in exchange for returning with Oxycodone. Andrews would then stash the pills in a hidden compartment in a door of the car. See N.T., 12/8/15, at 134-35, 157, 160-63, 167; N.T., 12/10/15, at 8-11, 19, 26; N.T. 12/14/15, at 77-78, 87; 119-23, 136. At least one witness (Dalila Torres) testified that Andrews sold the pills. See N.T., 12/8/15 at 140.[8]

Other testimony further implicated Appellant. Kandice Leonard-Rasheed testified that Appellant would be in a different car on the occasions that she helped Andrews acquire drugs using forged prescriptions. However, she overheard several telephone conversations between Andrews and Appellant about filling forged prescriptions, and, more than once, witnessed Andrews retrieve the pills hidden in the side-panel before exiting his car and getting into Appellant's car. See N.T., 12/8/15, at 193-98.

Raheem Hall testified that he also acquired Oxycodone for Andrews, who would both forge the prescriptions and sell the pills. See N.T. 12/9/15, at 59-61, 66-67. Hall testified that Andrews met with Appellant almost every

_____

[7] The Commonwealth presented approximately fourteen law enforcement officers, three experts in the field of the analysis of controlled substances, and six people who helped obtain prescriptions for Andrews.

[8] The Commonwealth also presented evidence that Appellant bailed Torres out of jail. See N.T., 12/8/15, at 34-35, 38, 138, 163.

day, and that Appellant would also be present when Andrews would pay Hall. Id. at 69-76, 86. Over Appellant's objection, Hall testified that Andrews once told Hall that Appellant was a driver for the forged-prescription operation.[9]

Finally, Floria Coffey testified that Appellant offered her a chance to "make some money," and on several occasions took her to fill fake prescriptions, which he obtained from Andrews. Appellant took her to several different pharmacies on several different days,[10] but they were only

_____

[9] The exchange was as follows:

> [ATTORNEY FOR THE COMMONWEALTH]: Okay. Did you have any conversations with either Andrews or [Appellant] about what [Appellant] was doing?
>
> [MR. HALL]: Yeah, Andrews told me that ---
>
> [ATTORNEY FOR [APPELLANT]]: Objection hearsay.
>
> [ATTORNEY FOR THE COMMONWEALTH]: Statements of a coconspirator, Your Honor.
>
> [THE COURT]: I will overrule and I will allow the questions.
>
> [ATTORNEY FOR THE COMMONWEALTH]: What did Andrews tell you about [Appellant]?
>
> [MR. HALL]: He was also a driver.
>
> [ATTORNEY FOR THE COMMONWEALTH]: Did he tell you anything else about what [Appellant] was doing?
>
> [MR. HALL]: Taking people out to bust scripts.

N.T. 12/9/15, at 71-72.

[10] On cross-examination, Coffey admitted that she could not recall if she went out with Appellant three times, as she testified on direct examination,
(Footnote Continued Next Page)

- 5 -

successful at the first pharmacy on the first day. On that occasion, Appellant gave her a prescription and $100, and, after passing the forged prescription, Coffey gave Appellant 90-120 Oxycodone pills. Appellant paid her and put the pills in a plastic wrapper and concealed them. Coffey testified that she did not observe Appellant deliver the drugs to anyone, but that Appellant then met with Andrews at a rest-stop for fifteen minutes, after which Appellant said he no longer had the pills. N.T., 12/14/15, at 148-71, 175, 182-85.

On December 15, 2015, the jury convicted Appellant of the nine crimes listed above.[11] Appellant was sentenced on February 23, 2016, to an aggregate of fourteen to twenty-eight years' incarceration.[12]

(Footnote Continued) ——————————
or six times, as she had testified before the Grand Jury. See N.T., 12/14/15 at 180-82, 185.

[11] By the time the case went to the jury, Appellant faced twenty-nine counts; on the charges of acquisition of a controlled substance by misrepresentation, possession with intent to deliver, identity theft, forgery, and criminal use of a communication facility, the Commonwealth asked the jury to find Appellant guilty of five counts of each crime. Each count spanned a different period of several months between February 1, 2013, and December 31, 2014. For each offense, the jury found Appellant not guilty for the first four counts (spanning February 1, 2013 to September 11, 2014), and convicted Appellant of the fifth count (spanning September 12, 2014 and December 31, 2014). Appellant was charged with just one count of each of the following: corrupt organizations, conspiracy (corrupt organizations), dealing in the proceeds of unlawful activity, and conspiracy (acquisition of a controlled substance by misrepresentation); each count spanned the period between February 1, 2013, and December 31, 2014, and Appellant was convicted on each count. Andrews was convicted of all twenty-nine counts.

[12] Appellant's sentences for acquisition (7 to 14 years' incarceration), identity theft (3 to 6 years' incarceration), forgery (1 to 2 years'
(Footnote Continued Next Page)

Appellant filed a motion for reconsideration on March 1, 2016, arguing that his sentence was excessive due to his negligible criminal record and minimal involvement with Andrews' drug scheme. The trial court denied the motion on March 3, 2016.

Appellant appealed on April 1, 2016[13]; however, this Court dismissed that appeal for Appellant's failure to file a docketing statement pursuant to Pa.R.A.P. 3517. See Commonwealth v. Geter, 498 WDA 2016 (Pa. Super.) (per curiam order, June 3, 2016). The trial court appointed new counsel for Appellant, and on January 5, 2017, after a hearing, reinstated Appellant's direct appeal rights.[14] Appellant filed a new notice of appeal on January 20, 2017.[15]

_____

(Footnote Continued) ——————————————

incarceration), and criminal use of communication facility (3 to 6 years' incarceration) were ordered to run consecutively. The other sentences to incarceration were set to run concurrently.

[13] Following that appeal, Appellant filed a Pa.R.A.P. 1925(b) statement, raising six issues. The trial court wrote a Pa.R.A.P. 1925(a) opinion addressing those issues.

[14] The order is dated January 3, 2017, but was date stamped by the Prothonotary on January 5, 2017, and docketed as filed that day. In the order, the court stated, "counsel for [Appellant] has today made an oral request for relief under the Post-Conviction Relief Act with said relief being the reinstatement of [Appellant's] direct appeal rights," and noted that the Commonwealth did not object to the reinstatement of Appellant's appellate rights.

[15] The trial court did not order Appellant to file a new Pa.R.A.P. 1925(b) statement following the filing of the second notice of appeal, and did not author a new Pa.R.A.P. 1925(a) opinion. Instead, on March 17, 2017, the trial court addressed a letter to this Court which stated:

(Footnote Continued Next Page)

Appellant raises the following four issues in his brief:

I.      Whether the trial court erred in denying Appellant Rondale Geter's motion to sever his case from co-defendant Kevin Andrews' case where co-defendant represented himself and sought to raise a defense under the Uniform Commercial Code, and the evidence was so overwhelming as to co-defendant Andrews as to accumulate to prejudicial effect against Mr. Geter.

II.     Whether the trial court erred in admitting hearsay evidence which tended to incriminate Mr. Geter in violation of the evidentiary prohibition against hearsay and the Confrontation Clause of the Constitution.

III.    Whether the Commonwealth failed to adduce sufficient evidence at trial to establish each and every element of each and every crime for which Mr. Geter was convicted beyond a reasonable doubt.

IV.    Whether the sentencing court imposed a manifestly unjust, unduly harsh aggregate sentence of fourteen (14) to twenty-eight (28) years incarceration by running several of the sentences consecutively given the nature of the case and length of sentence.

Appellant's Brief at 6 (capitalization omitted).

## Motion to Sever

Appellant first argues that the trial court erred in denying his motion to sever. *See* Appellant's Brief at 17-20. "The decision whether to sever trials of co-defendants is within the sound discretion of the trial court and will not

(Footnote Continued) ───────────────

In accordance with Rule of Appellate Procedure 1925(b) please be advised that I will be relying on the record in the above captioned matter. I believe that my Opinion of May 23, 2016 adequately addresses many of the preserved objections in the case. I believe that other preserved objections are adequately addressed in the record.

Letter, 3/17/17.

be disturbed on appeal absent a manifest abuse of that discretion." Commonwealth v. Smith, 985 A.2d 886, 903 (Pa. 2009), cert. denied, 562 U.S. 842 (2010).

Appellant argues that the majority of the Commonwealth's "voluminous, complex, and compelling" evidence was used against Andrews and thereby unfairly prejudiced Appellant, for whom the evidence was "paltry in comparison." See Appellant's Brief at 17-20. Appellant contends that the vast majority of witnesses "conceded that [Appellant] did not participate in Mr. Andrew's acquisition of prescription drugs — he was merely along for the ride," and posits that Appellant "was quite literally found guilty by association." Id. at 19. Appellant adds that this is evinced by his conviction on only one count for each crime, "in [a la] carte fashion," whereas the jury found Andrews guilty of all counts on all charges. Id. Appellant relies on Commonwealth v. O'Neil, 108 A.3d 900, 906 (Pa. Super.), appeal denied, 117 A.3d 296 (Pa. 2015), in which we held that the trial court erred in denying the defendant's motion to sever her case from that of her co-defendant. Appellant asserts that we held severance was appropriate in that case because "the vast majority of the evidence pertained only to the co-defendant's actions, and the case was 'fraught with

difficulty' in separating the evidence of the co-defendant's actions from that implicating [the defendant]." Appellant's Brief at 18.[16]

The Commonwealth responds that "The evidence incriminating [Appellant] was elicited each day of the trial and his involvement in the operation was directly interwoven with the modus operandi of Andrews' organization — [to] create fraudulent prescriptions, drive runners to fill the prescriptions, and pay the runners after the prescriptions were filled." Commonwealth's Brief at 14. The Commonwealth argues that —

> granting severance would have required the Commonwealth to present the same evidence at a separate trial. The Commonwealth would have to explain the organization, Andrews' role, [Appellant's role], and the modus operandi. This is particularly so for the conspiracy, corrupt organizations, and dealing in unlawful proceeds counts, which necessarily involve the actions of [Appellant] and Andrews. Judicial economy, and the similarity of the evidence against Appellant and Andrews, established that the trial court used reason when denying [Appellant's] severance motion.

Id. at 16-17.

Severance of defendants is governed by Rules 582 and 583 of the Rules of Criminal Procedure. Rule 582 states, in relevant part, "Defendants charged in separate indictments or informations may be tried together if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses."

_____

[16] Appellant also complains that he was prejudiced by Andrews' pro se representation and reliance on an unsuccessful "sovereign citizen" defense. Appellant's Brief at 19. Appellant provides no additional authority in support of his argument that his co-defendant's defense was a basis for severance.

Pa.R.Crim.P. 582(a)(2); see also O'Neil, 108 A.3d at 906 (explaining that Rule 582(a)(2) applies to situations where two defendants will be jointly tried). Rule 583, however, provides that "[t]he court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583. Our Supreme Court has provided the following guidance:

> When conspiracy is charged, a joint trial generally is advisable. In ruling upon a severance request, the trial court should consider the likelihood of antagonistic defenses. A claim of mere hostility between defendants, or that one defendant may try to exonerate himself at the expense of the other, however, is an insufficient basis upon which to grant a motion to sever. Indeed, this Court has noted that the fact that defendants have conflicting versions of what took place, or the extents to which they participated in it, is a reason for rather than against a joint trial because the truth may be more easily determined if all are tried together. Instead, severance should be granted only where the defenses are so antagonistic that they are irreconcilable — i.e., the jury essentially would be forced to disbelieve the testimony on behalf of one defendant in order to believe the defense of his co-defendant. Thus, a defendant claiming error on appeal has the burden of demonstrating that he suffered actual, not speculative, prejudice because of the ruling permitting a joint trial.

Commonwealth v. Brown, 925 A.2d 147, 161-62 (Pa. 2007) (quotation marks, citations, and footnote omitted)[17]; see also 18 Pa.C.S. § 903(d).[18]

_____

[17] See also Commonwealth v. Housman, 986 A.2d 822, 834 (Pa. 2009) ("[T]he fact the co-defendants blamed one another is insufficient to warrant separate trials based on antagonistic defenses. Mere finger[-]pointing alone — the effort to exculpate oneself by inculpating another — is insufficient to warrant a separate trial. Indeed, if truth is the goal, having all the
(Footnote Continued Next Page)

The trial court did not abuse its discretion in denying the motion to sever. Although the extent of Andrews' direct involvement in the forged-prescription scheme was greater than that of Appellant, and although some of the evidence over the seven-day trial established Andrews' guilt on counts as to which Appellant was not convicted, Appellant and Andrews were charged with essentially the same crimes, and with conspiracies to commit

(Footnote Continued) ————————————

finger[-]pointing before the same fact-finder is quite efficacious" (quotation marks and citations omitted)), cert. denied, 562 U.S. 881 (2010).

[18] Section 903(d) states:

Joinder and venue in conspiracy prosecutions.—

(1) Subject to the provisions of paragraph (2) of this subsection, two or more persons charged with criminal conspiracy may be prosecuted jointly if:

(i) they are charged with conspiring with one another; or

(ii) the conspiracies alleged, whether they have the same or different parties, are so related that they constitute different aspects of a scheme of organized criminal conduct.

(2) In any joint prosecution under paragraph (1) of this subsection:

(i) no defendant shall be charged with a conspiracy in any county other than one in which he entered into such conspiracy or in which an overt act pursuant to such conspiracy was done by him or by a person with whom he conspired;

(ii) neither the liability of any defendant nor the admissibility against him of evidence of acts or declarations of another shall be enlarged by such joinder; and

(iii) the court shall order a severance or take a special verdict as to any defendant who so requests, if it deems it necessary or appropriate to promote the fair determination of his guilt or innocence, and shall take any other proper measures to protect the fairness of the trial.

those crimes. It therefore was necessary for the jury to hear not just evidence related to Appellant's actions in furtherance of the conspiracy, but of Andrews' actions as well. See Commonwealth v. Lambert, 795 A.2d 1010, 1016 (Pa. Super.) (en banc) (holding defendant liable for acts of co-conspirators), appeal denied, 805 A.2d 521 (Pa. 2002).

In addition, as the trial court noted, the evidence relating to the counts faced by Andrews was not more provocative or prejudicial than the evidence relating to Appellant, as it established the same type of criminal activity as that with which Appellant was charged. Nor was the additional testimony relating to Andrews' involvement so complex as to induce confusion on the part of the jury, which consistently found Appellant guilty of crimes committed during the period between September 12, 2014, and December 31, 2014, and found Appellant not guilty of the charges related to the other time periods. The jury's lesser verdict for Appellant indicates that the jury understood and contemplated the separate levels of involvement of Appellant and Andrews. Moreover, the defenses rendered by Appellant and Andrews were not irreconcilable. Andrews' did not deny his involvement, and Appellant did; the jury therefore did not have to reject Andrews' defense in order to believe Appellant's defense.

Finally, we disagree that O'Neil mandates severance in this case. In O'Neil, we discussed at length the impropriety of jointly trying co-defendants when one defendant was charged with murder and the other co-defendant was not charged with either murder or conspiracy to commit

murder, or where one co-defendant was charged with a host of unrelated and more serious offenses. See O'Neil, 108 A.3d at 906-12. We held that despite the overlapping evidence between the defendant's corrupt organizations charge and the counts against her codefendant, the egregious charges presented against the codefendant (including "seven counts of first-degree murder based on the deaths of seven newborn infants, and third degree murder in the death of ['one mother during a botched abortion']") and the "inflammatory and inherently prejudicial" evidence of those charges necessitated separate trials. Id. at 901, 912-13. While we did find that severance was proper in part because the bulk of the trial evidence was introduced to prove the co-defendant's crimes, it was the differences between the nature of those crimes and the crimes of the defendant, and in particular, the prejudicial nature of those crimes, that motivated our decision. Id. at 912.[19] Here, to the contrary, there was not such a difference between the crimes charged against Andrews and Appellant — either in terms of severity, or emotional nature, or the volume of evidence — that separate trials were necessary. Therefore, Appellant's first issue is without merit.

_____

[19] We also acknowledged the imbalance in the amount of evidence because the defendant "was put to the added expense of defending this case for an extended period of time that would have been unnecessary if tried separately. Thus, counsel and the defendant sat through a two month trial, much of which did not relate to the charges against her." O'Neil, 108 A.3d at 912 n.12. Here, however, Appellant's trial lasted only seven days, and evidence about Appellant was presented throughout the trial.

Hearsay

Appellant claims that the trial court erred in admitting Raheem Hall's testimony that Andrews told him Appellant was a driver for forged-prescription runners. Appellant's Brief at 20. The admission of evidence "is at the discretion of the trial court and only a showing of an abuse of that discretion, and resulting prejudice, constitutes reversible error." Commonwealth v. Serrano, 61 A.3d 279, 290 (Pa. Super. 2013).

The trial court admitted Hall's testimony under the co-conspirator exception to the rule against hearsay. See Pa.R.E. 802(25)(E). Appellant argues that the testimony was inadmissible under that exception because the Commonwealth did not prove that Appellant was involved in a conspiracy at the time the statement was made. Appellant's Brief at 25-27. Appellant says this is evinced by the fact that Appellant was acquitted of the charges for activity during the relevant time period[20] and by Hall's conflicting testimony that Appellant never rode in the car with Hall and Andrews but "was doing something separate." Id. (citing N.T., 12.9.17, at 73).

Appellant also asserts that the statements were not made in furtherance of the conspiracy; that is, the statements were mere "narrative declarations" rather than statements made with "an intent to promote the conspiratorial objective." Appellant's Brief at 27-28 (citing Commonwealth v. Johnson, 838 A.2d 663 (Pa. 2003), cert. denied, 543 U.S. 1008

_____

[20] Appellant does not identify the time period to which he contends the statement at issue pertained.

- 15 -

(2004)). Appellant argues that the admission of this testimony was not harmless error, as Hall "was one of only two witnesses — among the Commonwealth's legion of witnesses — whose testimony directly incriminated [Appellant]." Id. at 28.[21]

One exception to the rule that hearsay[22] is typically inadmissible, see Pa.R.E. 802, is that the rule does not exclude a statement when it "is offered against an opposing party and . . . was made by the party's coconspirator during and in furtherance of the conspiracy." Pa.R.E. 803(25)(E). In order for statements to be admissible under this exception, "the existence of a conspiracy between the declarant and the defendant must be demonstrated by a preponderance of the evidence; the statements must be shown to have been made during the course of the conspiracy; and they must have been made in furtherance of the common design." Johnson, 838 A.2d at 674. "Conspiracy may be inferentially established, for example, by relation, conduct, or circumstances of the parties." Id. at 675. "The order of proof is within the discretion of the lower court, which may, upon only slight evidence of the conspiracy, admit such statements subject to later proof of

_____

[21] Appellant additionally argues that, regardless of whether Hall's statements were admissible under the Rules of Evidence, they violated his confrontation rights because they lacked "indicia of reliability." Appellant's brief at 22-25 (citing, inter alia, U.S. Const., Amend. VI; Pa. Const., Art. 1 § 9; Commonwealth v. Hanawalt, 615 A.2d 432 (Pa. Super. 1992)).

[22] Hearsay is a statement that "(1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Pa.R.E. 801.

the conspiracy." Commonwealth v. Feliciano, 67 A.3d 19, 27 (Pa. Super.) (en banc) (citation omitted), appeal denied, 81 A.3d 75 (Pa. 2013).

We conclude that the testimony was admissible pursuant to Rule 803(25)(E). Although Hall testified that Appellant was not present in the car and was "doing something else" when Andrews made the statements explaining Appellants' involvement in the conspiracy, Hall's overall testimony established by a preponderance of the evidence that a conspiracy existed and that Appellant was a part of it. Hall testified that he was a runner for Andrews, that Appellant was consistently present when Andrews would pay Hall, and that Hall saw Appellant and Andrews together almost every day. Appellant's involvement in the conspiracy was therefore not established by Andrews' out-of-court statement alone, but by Hall's personal knowledge.[23]

We also conclude that Andrews' statement to Hall explaining Appellant's involvement was not idle chatter, but made at a time that Andrews was training Hall to be a driver, and instructing Hall on the structure of, and interaction between, the members in the conspiracy. This type of explanatory statement — between two co-conspirators about the involvement of the third — qualifies as a statement made in furtherance of the conspiracy. The trial court therefore did not abuse its discretion in admitting the statement.

_____

[23] We are similarly unpersuaded that Hall's testimony of Andrews' out-of-court statements lacked indicia of reliability.

## Sufficiency of the Evidence

In Appellant's third issue, he argues that five of his nine convictions were not supported by sufficient evidence. Appellant's Brief at 31-39.

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. . . . When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.
>
> As a reviewing court, we may not weigh the evidence or substitute our judgment for that of the fact-finder, who is free to believe all, part, or none of the evidence.

Commonwealth v. Chambers, 157 A.3d 508, 512 (Pa. Super.) (citations omitted), appeal granted, 170 A.3d 1030 (Pa. 2017). A challenge to the sufficiency of the evidence may be raised for the first time on appeal. See Pa.R.Crim.P. 606(A)(7).

Appellant contends that the evidence was insufficient to convict him of possession with intent to deliver a controlled substance,[24] participation in a

_____

[24] A person is guilty of possession with intent to deliver if he or she engages in the following:

> Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

corrupt organization,[25] conspiracy to participate in a corrupt organization, dealing in the proceeds of unlawful activity,[26] and identity theft.[27] Appellant's arguments all stem from the fact that on some charges (including possession with intent to deliver and identity theft) Appellant was convicted only on counts which specified the time period of the crimes as between September 12, 2014, and December 31, 2014, whereas he was found not guilty on the counts spanning time periods between February 1, 2013, and September 11, 2013. See note 11, supra.[28] Appellant contends that the only evidence relating to Appellant during the time period for which he was convicted was the testimony of Floria Coffey, who testified that she and Appellant were successful at passing a forged prescription on only one

_____

[25] The corrupt organizations statute states that "It shall be unlawful for any person employed by or associated with any enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 Pa.C.S. § 911(b)(3).

[26] A person is guilty of dealing in proceeds of unlawful activity "if the person conducts a financial transaction under any of the following circumstances: (1) With knowledge that the property involved, including stolen or illegally obtained property, represents the proceeds of unlawful activity, the person acts with the intent to promote the carrying on of the unlawful activity." 18 Pa.C.S. § 5111(a)(1).

[27] "A person commits the offense of identity theft of another person if he possesses or uses, through any means, identifying information of another person without the consent of that other person to further any unlawful purpose." 18 Pa.C.S. § 4120.

[28] On each of the other charges (including corrupt organizations and dealing in the proceeds of unlawful activity), Appellant was convicted of only one count that spanned the time period between February 1, 2013 and December 31, 2014.

occasion within that period. Appellant argues that Coffey's testimony regarding Appellant's actions on that single occasion did not establish every element of each of the four convictions he challenges on appeal.[29]

We do not agree that Appellant's convictions relied upon Coffey's testimony alone. We begin with Appellant's conspiracy charges.

> A conviction for criminal conspiracy, 18 Pa.C.S.A. § 903, is sustained where the Commonwealth establishes that the defendant entered an agreement to commit or aid in an unlawful act with another person or persons with a shared criminal intent and an overt act was done in furtherance of the conspiracy.
>
> The essence of a criminal conspiracy is the common understanding that a particular criminal objective is to be accomplished. Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient. Rather, the Commonwealth must prove that the defendant shared the criminal intent, i.e., that the Appellant was "an active participant in the criminal enterprise and that he had knowledge of the conspiratorial agreement." The defendant does not need to commit the overt act; a co-conspirator may commit the overt act.

_____

[29] To elaborate, Appellant argues that his conviction for possession with intent to deliver and dealing in the proceeds of unlawful activity were not supported by sufficient evidence because Coffey's testimony did not establish Appellant's intent either to deliver or to sell the Oxycodone they illegally obtained from the pharmacy. Appellant's Brief at 32, 37-38. Appellant argues that the Commonwealth did not offer sufficient evidence to prove every element of the corrupt organizations charge because Coffey's testimony could not establish that Appellant was involved in a pattern of racketeering, or that Appellant and Andrews were in a group with a common objective, or that Appellant's single episode with Coffey constituted substantial business with such a group. Id. at 32-37. Regarding conspiracy, Appellant claims that the record does not present any evidence which would establish an agreement between Appellant and another party. Id. at 37. Finally, Appellant argues that there was insufficient evidence to convict Appellant of identity theft, because Coffey's testimony did not establish that when Appellant used the identification information of another person, he did so without that person's consent. Id. at 38-39.

A conspiracy is almost always proved through circumstantial evidence. "The conduct of the parties and the circumstances surrounding their conduct may create 'a web of evidence' linking the accused to the alleged conspiracy beyond a reasonable doubt." The evidence must, however, "rise above mere suspicion or possibility of guilty collusion."

This Court has identified factors to be considered:

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy. The presence of such circumstances may furnish a web of evidence linking an accused to an alleged conspiracy beyond a reasonable doubt when viewed in conjunction with each other and in the context in which they occurred.

Lambert, 795 A.2d at 1016 (citations omitted).

Here, Appellant was convicted of two counts of conspiracy: conspiracy to commit the crime of corrupt organizations, and conspiracy to commit the charge of acquiring or obtaining possession of a controlled substance by misrepresentation.[30] Given the recitation of facts above, we conclude that sufficient circumstantial evidence was presented for the jury to conclude that a conspiracy for these criminal ends existed between Appellant and Andrews during the time period for which Appellant was convicted.

Because the Commonwealth proved to the jury that a conspiracy existed, the jury was free to consider Appellant's guilt on the other charges

_____

[30] Appellant has not argued that these were not separate conspiracies that could give rise to two convictions under 18 Pa.C.S. § 903(c).

not only as a principal actor, but also as a co-conspirator. As we have stated,

> Once there is evidence of the presence of a conspiracy, conspirators are liable for acts of co-conspirators committed in furtherance of the conspiracy. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators taken in furtherance of the conspiracy.
>
> The general rule of law pertaining to the culpability of conspirators is that each individual member of the conspiracy is criminally responsible for the acts of his co-conspirators committed in furtherance of the conspiracy. The co-conspirator rule assigns legal culpability equally to all members of the conspiracy. All co-conspirators are responsible for actions undertaken in furtherance of the conspiracy regardless of their individual knowledge of such actions and regardless of which member of the conspiracy undertook the action.
>
> The premise of the rule is that the conspirators have formed together for an unlawful purpose, and thus, they share the intent to commit any acts undertaken in order to achieve that purpose, regardless of whether they actually intended any distinct act undertaken in furtherance of the object of the conspiracy. It is the existence of shared criminal intent that "is the sine qua non of a conspiracy."

Lambert, 795 A.2d at 1016-17; see also Commonwealth v. Irvin, 134 A.3d 67, 77 n.13 (Pa. Super. 2016) (defendant who conspired to possess drugs with the intent to deliver them was liable for all drugs recovered from coconspirators, regardless of whether defendant actually possessed those specific drugs); Commonwealth v. Galindes, 786 A.2d 1004, 1011 (Pa. Super. 2001) (defendant who conspired to commit burglary was also liable for aggravated assault by coconspirator in furtherance of burglary,

regardless of defendant's specific intent to commit that crime), appeal denied, 803 A.2d 733 (Pa. 2002).[31]

The jury was instructed that if it found a conspiracy existed, it could hold Appellant liable for any crimes done in furtherance of that conspiracy, including those crimes perpetrated principally by co-conspirators. See N.T., 12/15/15 at 153-54. The jury was therefore free to consider, in addition to Appellant's actions, the actions of each co-conspirator, including Andrews, done in furtherance of the conspiracy. The evidence undeniably established that Andrews was guilty of these crimes, and that all were committed in furtherance of the conspiracies for which Appellant and Andrews were charged. There therefore was sufficient evidence for the jury to convict Appellant for these crimes, and it does not matter that Coffey's testimony may not also have linked Appellant to the crimes. See Commonwealth v. Knox, 105 A.3d 1194, 1198 (Pa. 2014) (upon a challenge to the sufficiency of evidence of a firearms charge, finding that although the question of defendant's accomplice liability remained unresolved, the trial court's

_____

[31] See also Commonwealth v. Simpson, 754 A.2d 1264, 1274 (Pa. 2000), cert. denied, 533 U.S. 932 (2001):

> [U]nder general principles of conspiratorial liability a defendant can be held criminally responsible for the entirety of the acts of his co-conspirators performed in furtherance of the conspiracy, regardless of whether the defendant intended that certain acts be undertaken. Stated differently, a defendant can be held accountable for the actions of his or her co-conspirators although the defendant did not specifically intend for the co-conspirators to perform these acts.

instructions to the jury additionally "discussed the concept of conspiratorial liability as well as principal liability, and each stands as an adequate and independent basis supporting [the defendant's] conviction"; appellate Court therefore had adequate bases on which to affirm).[32]

## Length of Sentence

In Appellant's final issue, he complains that his sentence of fourteen to twenty-eight years was unduly harsh and excessive. Appellant must pass a four-part test when invoking this Court's jurisdiction to challenge the discretionary aspects of a sentence:

> (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect [under Pa.R.A.P. 2119(f)]; and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

Commonwealth v. Buterbaugh, 91 A.3d 1247, 1265-66 (Pa. Super.) (en banc) (citation omitted; alteration in original), appeal denied, 104 A.3d 1 (Pa. 2014). To avoid a "fatal defect," an appellant's brief must include a separate concise statement demonstrating that there is a substantial question regarding the appropriateness of the sentence under the Sentencing Code. Commonwealth v. Mouzon, 812 A.2d 617, 621 (Pa. 2002) (citing Pa.R.A.P. 2119(f)).

_____

[32] As we affirm on this basis, we need not determine whether the evidence also established that Appellant was guilty of each crime as a principal.

Here, Appellant has filed a timely notice of appeal following the reinstatement of his appellate rights, and has included a 2119(f) statement. However, Appellant's complaints on appeal differ from those made in his post-sentence motion. In the motion, Appellant complained that the court did not adequately consider the mitigating circumstances of Appellant's youth, sparse criminal record, and relatively low involvement in the instant case. On appeal, Appellant complains that his sentence was nearly half of that imposed on Andrews, even though Andrews was convicted of almost four times the number of charges. Appellant additionally contends that the court's finding that Appellant exhibited a lack of remorse was unsupported by the record. Finally, because Appellant was convicted of only one count of each crime, but the court lectured Appellant "on the drug addiction epidemic in the country and Pennsylvania," Appellant's contends that his sentence was "a statement on the drug epidemic, generally, and not tailored to [Appellant], specifically, and was an end-run around the jury's acquittal on many of the charges." Appellant claims the court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense, and the Appellant's rehabilitative needs. See Appellant's Brief at 39-43.

Although we could find waiver based on these discrepancies, we find it within our discretion to conclude that Appellant has preserved the general complaint that his sentence is excessive and that the trial court failed to consider the appropriate sentencing criteria. We have previously held that

- 25 -

these claims in combination present a substantial question. See Commonwealth v. Swope, 123 A.3d 333, 340 (Pa. Super. 2015). We therefore review Appellant's sentence pursuant to the following standard:

> The imposition of sentence following the revocation of probation is vested within the sound discretion of the trial court, which, absent an abuse of that discretion, will not be disturbed on appeal. An abuse of discretion is more than an error in judgment — a sentencing court has not abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

Commonwealth v. Sierra, 752 A.2d 910, 913 (Pa. Super. 2000) (quotation marks and citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Wade A. Kagarise, we conclude that Appellant's sentencing claims lack merit. See Trial Ct. Op. at 6-8 (discussing the reasons for Appellant's sentence and its consideration of the sentencing factors under 42 Pa.C.S. § 9721(b)).[33] Accordingly, we affirm on this issue on the basis of the trial court's opinion. The parties are instructed to attach a copy of the trial court's May 23, 2016 opinion to any filings referencing this Court's decision.

Judgment of sentence affirmed.

_____

[33] We note also that the trial court reviewed a presentence investigation report prior to imposing sentence. See Commonwealth v. Downing, 990 A.2d 788, 794 (Pa. Super. 2010) (where a court is informed by a pre-sentence report, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and where the court has been so informed, its discretion should not be disturbed).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2017

IN THE COURT OF COMMON PLEAS OF BLAIR COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA    :
                                      :     NO. 2015 CR 710

        vs.                        :

                                        :

RONDALE MALIK GETER,           :
              Defendant         :

HON. WADE A. KAGARISE              PRESIDING JUDGE

DAVID GORMAN, ESQUIRE             DEPUTY ATTORNEY
                                       GENERAL

PERRY FLAUGH, ESQUIRE             COUNSEL FOR DEFENDANT

FILED
BLAIR COUNTY, PA
PROTHONOTARY
CLERK OF COURTS
MAY 23 PM 3 25

## 1925 (b) OPINION

**May 23, 2016**

This Opinion is issued by the Court following the Appellant's filing of a Concise Statement of Errors Complained of on Appeal pursuant to Rule of Appellate Procedure 1925.

## PROCEDURAL HISTORY:

The Commonwealth filed a criminal complaint against Rondale Malik Geter ("Defendant") on January 15, 2015. On April 24, 2015, the Commonwealth charged the Defendant via its filing of criminal information with thirty seven (37) criminal counts. On June 2, 2015, Defendant filed a motion for extension of time to file an omnibus pretrial motion. On June 3, 2015, the Commonwealth filed notice of joinder informing Defendant of its intention to try together Defendant and other parties. This Court entered an order on June 10, 2015, granting Defendant's motion for extension and giving him until July 28, 2015, to file his omnibus pretrial motion. On July 29, 2015, Defendant filed his omnibus pretrial motion. Defendant filed an

1

# 51

application for modification of his bond on July 15, 2015. This Court issued an order on July 29, 2015, scheduling Defendant for a status conference on September 3, 2015. Defendant filed a motion for reduction of monetary condition of bail on August 13, 2015. Defendant filed a request for continuance of the omnibus pretrial hearing, which was scheduled for September 3, 2015, on September 2, 2015. This Court entered an order on September 3, 2015, which granted Defendant's request for a continuance.

Following a status conference on October 1, 2015, this Court issued an order on October 5, 2015, which scheduled this matter for jury selection on November 23, 2015. Defendant filed a new request for a hearing on his pretrial motions on October 9, 2015, because the original hearing was cancelled pending plea deal negotiations with the Commonwealth. This Court scheduled Defendant's omnibus pretrial hearing for November 9, 2015. On November 16, 2015, this Court having conducted a hearing on Defendant's omnibus pretrial motions, entered an order deferring Defendant's motion to suppress, and denying Defendant's motion to sever, motion for change of venue, and petition for reduction of bail. Following a pretrial conference on November 23, 2015, this Court issued an order denying and dismissing Defendant's request for a continuance.

Defendant's seven day jury trial commenced on December 7, 2015, and concluded on December 15, 2015. This Court entered an order on December 8, 2015, denying Defendant's motion to suppress, which was deferred by an earlier order of this Court. This Court entered an order on December 9, 2015, granting an oral motion *in limine* made by the Commonwealth, which regarded testimony by Raheem Hall. On December 15, 2015, the empaneled jury reached a verdict and found Defendant guilty of nine (9) counts, specifically: Count 5, Count 10, Count 11, Count 12, Count 13, Count 18, Count 27, Count 32, and Count 37. Following entry of the

2

verdict, this Court scheduled Defendant for sentencing on March 4, 2015. The Commonwealth filed a motion for continuance, which was granted, and sentencing was subsequently rescheduled for February 23, 2016. On February 9, 2016, Defendant filed a motion challenging the weight of the evidence pursuant to Pa. R. Crim. P. 607 and asked for a hearing. This Court entered an order on February 19, 2016, which denied and dismissed Defendant's motion challenging the weight of the evidence.

Defendant's sentencing occurred on February 23, 2016. This Court entered an order on February 23, 2016, sentencing Defendant to a total of not less than fourteen (14) and not more than twenty eight (28) years in a state correctional facility. Defendant filed a motion for reconsideration of his sentence on March 1, 2016. On March 3, 2016, this Court entered an order denying and dismissing the Defendant's motion for reconsideration. Defendant filed his notice of appeal on April 1, 2016. Defendant's counsel, Perry L. Flaugh, Esq., filed a petition to withdraw as counsel on shortly after filing Defendant's notice of appeal on April 1, 2016. This Court entered its 1925(b) order on April 4, 2016, giving Defendant twenty one (21) days to file a concise statement of errors. Additionally, this Court granted Defendant leave to continue in forma pauperis, upon motion of Attorney Flaugh to withdraw, on April 4, 2016. On May 2, 2016, this Court entered an order, which reaffirmed Attorney Flaugh as Defendant's counsel in light of this Court's understanding that the appellate court must handle such an issue once defense counsel has filed a Defendant's notice of appeal. On May 6, 2016, the Defendant filed a concise statement of matters complained of. Accordingly, we now proceed to disposition.

**APPLICABLE LAW/DISCUSSION:**

In the Defendant's Statement of Matters Complained of Pursuant to 1925(b) of the Rules of Appellate Procedure, the Defendant alleged the following errors:

3

1. Whether the trial court judge abused his discretion or made an error of law in denying appellant's Petition for Reconsideration.

2. Whether the trial court judge abused his discretion or made an error of law in the jury instructions.

3. Whether the trial court judge abused his discretion or made an error of law in denying appellant's Motion Challenging the Weight of the Evidence Pursuant to Pa. R.Crim.P. 607.

4. Whether the trial court judge abused his discretion or made an error of law in denying appellant's Motion to Modify or Reconsider Sentence.

5. Whether the trial court judge abused his discretion or made an error of law in denying any of appellant's Objections during the trial of this case.

We will address each one of these errors individually.

**1. Whether the trial court judge abused his discretion or made an error of law in denying appellant's Petition for Reconsideration.**

The Court is interpreting the Petition for Reconsideration as a Motion to Modify

or reconsider sentence. Therefore, the analysis for this issue is addressed under

paragraph 4.

**2. Whether the trial court judge abused his discretion or made an error of law in the jury instructions.**

Matters not raised in the trial court may not be pursued on appeal. *Pa. R.A.P.*

*§302(a)*. A general exception to the charge to the jury will not preserve an issue for

appeal. *Pa. R.A.P.§302(b)* Appellant cannot raise a claim on appeal having not

objected to the instruction to the jury in the trial court. The issue is deemed to be

waived. See *Commonwealth v. West*, 937 A.2d 516, 522.

A review of the record in this matter suggests that the Defendant only stated one

objection on the record regarding the proposed jury instruction. This objection

resulted when the Defense contested the Commonwealth's request for a flight

4

instruction regarding Mr. Geter. This Court sustained the Defendant's objection and did not give a flight instruction to the jury for this Defendant. The record does not evidence any other objections made by the Defendant concerning the Court's instructions to the jury. Defense counsel specifically stated at the close of the Court's instructions that he did not have any objection to the Court's instructions as read to the jury. For this reason, this Court believes that the Defendant has waived any alleged error of law in the Court's instruction to the jury.

3. **Whether the trial court judge abused his discretion or made an error of law in denying appellant's Motion Challenging the Weight of the Evidence Pursuant to PA. R. Crim. P. 607.**

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The fact finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met. Appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings. *Commonwealth. v. Cousar*, 928 A.2d. 1025, 1035-36 (Pa. 2007).

An Appellant fails adequately to identify in a concise manner the issue sought to be pursued on appeal when he challenges the weight of the evidence in a general

5

manner. *Commonwealth v. Seibert*, 799 A.2d. 54 (Pa. Super. 2002). In *Seibert*, the Appellant stated in his Concise Statement of Matters Complained of on Appeal that "The verdict of the jury was against the weight of the credible evidence as to all of the charges". *Id.* at 62. This Court finds the facts and circumstances of this case to be similar. Appellant provides only a general statement challenging the weight of the evidence. To the extent that the Superior Court believes that this issue has not been waived, this Court will rely on the record. We believe that the verdict issued by the jury in this case was not contrary to the weight of the evidence regarding any of the charges.

## 4. Whether the trial court judge abuse his discretion or made an error of law in denying appellant's Motion to Modify or Reconsider Sentence.

We next examine Defendant's assertion that this Court erred in denying his motion to modify or reconsider sentence.

Under Pennsylvania law, the sentencing Court is vested with sound discretion to render judgment, and this judgment will not be disturbed absent an abuse of discretion. *Com. v. Sharp*, 792 A.2d 1266, 1268 (Pa. Super. 2002). However, an abuse of discretion is more than just an error in judgment. *Com. v. Jordan*, 125 A.3d 55, 71 (Pa. Super. 2015). Such abuse of discretion will only be found if the judgment was "manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will." *Id.* This discretion allows the sentencing judge to sentence up to and including the maximum sentence authorized by statute; the only line that a sentence may not cross is the statutory maximum sentence. *Com. v. Gordon*, 942 A.2d 174, 182 (Pa. 2007).

Pennsylvania law requires that the sentencing court "shall make as a part of the record, and disclose in open court at the time of the sentencing, a statement of the reason or reasons for the sentence imposed." **42 Pa.C.S.A. § 9721(b).** "Indeed, in fashioning sentence, a judge is

6

obligated to follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." *Com. v. Monahan*, 860 A.2d 180, 184 (Pa. Super. 2004).

Here, this Court is satisfied that it followed the statutory sentencing requirements of **42 Pa.C.S.A. § 9721(b)** and Pennsylvania law. The Court readily acknowledged at the sentencing hearing on February 23, 2016, that the Pre-Sentence Investigation ("PSI") "present[ed] both facts in favor of [the Defendant] and facts against [the Defendant.]" **Sentencing Transcript at 18**. On the positive side, we considered Defendant's ties to his family, the lack of violence in the underlying matter, and the Defendant's insistence on taking care of and providing for his son. On the negative side, this Court went on to detail the Defendant's criminal history, which included a robbery conviction and subsequent recommitments for parole violations on this conviction. **Sentencing Tr. at 19**. Defendant's prior record score as a repeat felon ("RFEL"), a very serious category of offender, was also considered. **Sentencing Tr. at 19**. While Defendant maintained at sentencing that leniency would afford him an opportunity to rehabilitate himself, we note that Defendant had such chances by way of his prior incarceration, which he did not use. This Court was therefore hesitant to grant Defendant more such opportunities.

We also considered the public safety as a factor in determining Defendant's sentence. Specifically, we explained that the Defendant's actions, namely illegally procuring and disseminating opioids, contributed to an already pronounced epidemic of narcotic addiction and abuse. **Sentencing Tr. at 19-20**. That Defendant would participate in such activity, which has destroyed and taken lives both in Pennsylvania and around the country, is an indication of the severity of this crime. This Court believes that Defendant was motivated "by profit and [by] a

7

pure desire to get money from his criminal activities." **Sentencing Tr. at 20.** This Court also wishes to note that the sentences imposed on the Defendant's convictions were within the standard range of the sentencing guidelines. Where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the sentencing code. *Com. v. Griffin*, 65 A.3d 932, 937 (Pa. Super. 2013) (Citing Com. v. Moury, 992 A.2d 162, 171 (Pa. Super. 2010)).

Therefore and in light of these factors, this Court affirms its judgment of sentence as originally ordered.

5.  **Whether the trial court judge abuse his discretion or made an error of law in denying any of appellant's Objections during the trial of this case.**

"When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa. Super. 2000), appeal granted, 769 A.2d 442, (2001), citing, *Giles v. Douglass*, 747 A.2d 1236, 1237 (Pa. Super. 2000). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa. Super. 2000). In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all. *Commonwealth v. Dowling*, 788 A.2d 683, 686-687 (Pa. Super. 2001).

The record establishes that during the course of the seven day trial proceedings, defense counsel made numerous objections. We cannot ascertain from Defendant's Concise Statement of Matters Complained of on Appeal what specific objections he is challenging. Therefore, we believe that the Appellant has failed to adequately

8

identify in a concise manner the objections that he is pursuing on appeal and therefore this Court is unable to prepare a proper legal analysis.

**CONCLUSION**:

For the reasons detailed in this Opinion, this Court believes that the Defendant's appeal is without merit.

BY THE COURT:

_____ J.

9